## HILL v. UNITED STATES.
### No. 97.

Circuit Court of Appeals, Second Circuit.
May 8, 1939.

Joseph A. McNamara, U. S. Atty., of Burlington, Vt., and William J. Hession, of Boston, Mass., Department of Justice (Julius C. Martin, of Washington, D. C., Director, Bureau of War Risk Litigation, Wilbur C. Pickett, Sp. Asst. to Atty. Gen., Young M. Smith, of Washington, D. C., Department of Justice, of counsel), for the United States.

H. A. Bailey and Richard H. Cowles, both of Burlington, Vt., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a war risk insurance case in which the government is appealing from a judgment, entered on a verdict for $13,455 in favor of the plaintiff, on the ground that there was no substantial evidence that the insured became permanently and totally disabled during the period of protection under a $10,000 contract of insurance that expired March 31, 1919, for nonpayment of premiums. The insured filed his petition on September 8, 1932, alleging that he had been permanently totally disabled since his discharge from the army on February 28, 1919. The cause of the alleged disability was not assigned, but at the trial reliance was placed on chronic bronchitis. The government interposed a general denial. The question presented by its appeal from the judgment is whether there was any substantial evidence that the insured became permanently totally disabled before the expiration of insurance protection on March 31, 1919.

Under the well known regulation promulgated pursuant to law:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed * * * to be total disability."

"Total disability shall be deemed to be permanent whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it * * *".

The foregoing administrative regulation formed a part of the insurance contract and had the force of law. White v. United States, 270 U.S. 175, 180, 46 S.Ct. 274, 70 L.Ed. 530.

The plaintiff's war risk term insurance policy was issued to him on January 10, 1918. On September 27, 1918, he was exposed to mustard gas, which burned him externally and affected his bronchial tubes. He was rendered unconscious for three days, and he testified that he was unable to see for nearly three months. He was given steam treatment for about three months in a hospital at Nantes, in France. He was in bad condition during this period as to lungs and heart and was coughing constantly. He returned to America on a hospital ship and

upon his arrival in Boston was treated in various army hospitals until about the time of his discharge at Camp Devens in February, 1919. His discharge papers certified: "Physical condition when discharged: good."

In the summers of 1919 and 1920 he was employed about half the time in a box factory. His employer testified that he was not working all the time "because the nature of the work was irregular, but we considered him one of our regular men and would send for him whenever there was work." He worked on a farm for four or five months in 1920 and 1921, on the roads for "a month or two at a time" at uncertain periods, probably between 1921 and 1924. He worked at the Richmond Cooperative Creamery from July 4, 1923, to October 27, 1923, and from April 13, 1925, to November 11, 1925, likewise at temporary jobs in harvesting ice in 1926, 1928, 1929, 1930, 1931, 1932, 1933, 1935 and 1936. He likewise did general farm work from November, 1926 to July 23, 1927. He testified that he did not attempt to secure employment after he got his pension in 1927, which in 1936 had reached the amount of $50 per month. He, however, worked on a riprapping job on the river, sweeping the banks and shovelling snow from November 21, 1932, until March 21, 1933, and on a W.P.A. project from November 16, 1933, through February 22, 1934.

Although we have omitted from the foregoing statement some periods of employment subsequent to March 31, 1919, when insurance protection ceased, it is quite evident that the insured did a large amount of work between that date and the bringing of the present action. There is no proof in the record that when he was able or chose to secure employment it was not considerable in amount. At times it was substantially continuous for long periods. It is true that there was evidence that some of the work he did was too heavy not to have caused harm to a man subject to chronic bronchitis. But the medical experts on both sides agreed that he was able to do light work without any injurious effect.

Dr. Soule, the insured's own expert, who examined him in 1936, admitted that he would have been safe in doing light work, either white collar jobs or work as a night watchman or as an elevatorman. Dr. Upton, another physician who was a witness for the insured, examined him in 1936 and gave testimony to the same effect. Dr. Caldwell, a further witness for the insured, examined him in 1921 and 1933, made a diagnosis of chronic bronchitis, and testified that there was no reason why he could not do bookkeeping or any light work.

Dr. Rogers was called by the defendant, examined the insured in June, 1921, and found no evidence then of bronchitis and reported to the Veterans' Bureau that he was then fit to work. Dr. Beecher, another expert for the government, in January, 1925, found no evidence of chronic bronchitis and discovered nothing in his condition showing that he could not work.

To establish the plaintiff's cause of action he was obliged to show that he was totally and permanently disabled during the pendency of the policy. His formidable record of work, his delay for thirteen years after the policy elapsed before bringing suit, and the agreement of his own medical witnesses with those of the defendant that he could perform light work without injurious effect, completely negative his claim that he could not do continuous work. United States v. Spaulding, 293 U.S. 498, 506, 55 S.Ct. 273, 79 L.Ed. 617; Lumbra v. United States, 290 U.S. 551, 561, 54 S.Ct. 272, 78 L.Ed. 492.

We find in the present action another attempt to establish by experts that a man was totally and permanently disabled in 1919 although he did a great amount of hard work during the thirteen years between that time and the date when he sued to recover on his policy. A claimant who first asserts his rights so long after the lapse of his policy is under a considerable burden, but in the present case he must fail in any event, for even if the expert testimony on which he so strongly relies be taken at its face value, the physicians all admitted that he could work without risk of harm to himself in occupations not calling for heavy physical exertion. Such a limitation of his activities would not leave him totally and permanently disabled and in the absence of total and permanent disability he was not entitled to recover under the allegations of the complaint and the verdict on which the judgment was based ought not to stand.

Judgment reversed.